IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT DIRECTING THE DISCLOSURE OF GPS/E911 LOCATION DATA RELATING TO SPECIFIED WIRELESS TELEPHONE | )<br>)   Magistrate No. 21-2268<br>)<br>)   **[UNDER SEAL]**<br>)<br>) |

**APPLICATION FOR WARRANT DIRECTING THE DISCLOSURE
OF PROSPECTIVE GPS/E911 LOCATION DATA RELATING
TO WIRELESS TELEPHONE**

I, Ryan Melder, Special Agent, Federal Bureau of Investigation ("FBI"), being duly sworn, state as follows:

I am a Special Agent with the Federal Bureau of Investigation. I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C); that is, a federal agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

I have been directly involved in several narcotics and firearms-related arrests and the service of several narcotics and firearms-related search warrants. I have participated in handling cooperating sources of information who were involved in narcotics acquisition and/or trafficking. In addition, I have reviewed thousands of communications between drug traffickers as a result of my participation in multiple wiretap investigations, and I have had many conversations with drug traffickers and users as well as with other law enforcement officers about the methods and language used by traffickers to smuggle, store, and distribute drugs, collect and launder drug proceeds, and avoid getting caught by law enforcement officers. As a result of my narcotics-related training and experience, I am familiar with the methods and language used to distribute

narcotics, to launder proceeds, and to operate drug-trafficking conspiracies.

Drug traffickers commonly conceal their activities from members of the public by transacting their business in a covert manner and/or during the nighttime hours when darkness helps to conceal their activities. In addition, large-scale drug traffickers often have multiple locations (including businesses, residences, and/or "stash houses") from which they operate their illegal activities and in which they maintain evidence of said illegal activities. Based on my training and experience I am aware that it is also typical for drug traffickers to carry their cellphones while maintaining these locations.

For the reasons and to the extent detailed below, this application seeks:

A warrant pursuant to 28 U.S.C. § 1651(a), Federal Rules of Criminal Procedure 41 and 57(b), 18 U.S.C. § 2703(c)(1)(A), and any other applicable provision, directing the disclosure of records and physical location data, as described more fully below, generated at any time up to 45 days from the date the warrant was issued, at such intervals and times as the United States may request, including during nighttime hours, that will establish the approximate position of the wireless telephone serviced T-Mobile and assigned telephone number **724-808-6779 ("TT1 or TARGET TELEPHONE 1")**.

Authorization under 18 U.S.C. § 3103a and any other applicable provisions, for good cause shown, not to reveal the warrant applied for herein until 30 days after acquisition of the last court-authorized disclosure (unless extended for good cause shown by an updated explanation of the need for further delay);

An order pursuant to 18 U.S.C. § 2705(b) and any other applicable provision, in conjunction with the warrant applied for herein, that directs T-Mobile, as well as its agents and

representatives, not to disclose the existence of the warrant, its execution, or the existence of the underlying investigation until further notice; and

An order sealing until further notice the application, warrant, and all orders and other papers and writings filed with or concerning this application because, as further explained below, a sensitive investigation is currently ongoing and premature disclosure of the existence of the investigation could result in, among other things, danger to those involved in the investigation and loss of evidence.

This application relates to the ongoing FBI investigation of Hassan BRACK (BRACK) and others known and unknown, for their involvement in the RIPPY drug trafficking organization (herein referred to as "the Organization"), operating throughout the city of Butler and other locations in the Western District of Pennsylvania.

As further established below, there is probable cause to conclude that BRACK, user of **TT1**, communicate about the distribution of narcotics with members and associates of the Organization, operating in Western Pennsylvania, and possesses **TARGET TELEPHONE 1** while he is engaged in drug trafficking, all in violation of Title 21, United States Code, Section 841(a)(1), that is, possession with intent to distribute a controlled substance, specifically crack cocaine; Title 21, United States Code, Section 843(b), that is, unlawful use of a telephone to facilitate the distribution of methamphetamine; and Title 21, United States Code, Section 846, that is, conspiracy to distribute or possess with the intent to distribute crack cocaine (the "TARGET OFFENSES").

T-Mobile, which services **TT1**, have the technical means to generate and provide the records and physical location data referenced herein. This data is the product of techniques that the service provider may have developed to comply with a federal mandate to supply emergency

responders with enhanced 911 ("E-911") service. E-911 Phase II data provides relatively precise location information about the cellular telephones, either via GPS tracking technology built into the phones or by triangulating on the devices' signals using data from several of the provider's cell towers.

When directed pursuant to court order, T-Mobile will provide a designated law enforcement agency with periodically updated physical location data with respect to **TARGET TELEPHONE 1**.

I submit that the following establishes probable cause to conclude that crimes have been committed, that BRACK committed and will continue to commit those crimes, and that the information likely to be received concerning the location of **TARGET TELEPHONE 1** will constitute evidence of the commission of those crimes in the Western District of Pennsylvania. It should be noted that I have personally participated in the investigation outlined herein. In addition, I have discussed this case with and/or reviewed the reports of other law enforcement officers who have been involved in this investigation or who have investigated BRACK in the past. This application is being submitted for the specific purpose stated above. I have not, therefore, included every fact known to me concerning the investigation.

## PROBABLE CAUSE

### Confidential Source Information

Since July 2021, case agents for this investigation have been in direct, personal contact with a cooperating source referred to herein as "CS1".[1] The case agents believe CS1 to be reliable

---

[1] CS1 has prior arrests and criminal convictions. However, a detailed list of those charges and dates of arrests and convictions for CS1 will not be included since doing so will likely reveal the identity of CS1 and thus place CS1's safety in jeopardy. Based upon information provided to me from other agents/officers, who had prior conversations with CS1, and based upon the fact that CS1's information was corroborated through other law enforcement means, I believe that the information provided by CS1, relative to the instant investigation, is reliable.

and credible because, as demonstrated herein, much of CS1's information has been independently corroborated by prior and/or subsequent events and observations that were beyond CS1's control. The case agents have had multiple in-person discussions with CS1 about CS1's knowledge of ongoing criminal activity in Western Pennsylvania, including the narcotics trafficking activities of BRACK.

CS1 is not an anonymous source – the agents' interactions with CS1 were in-person and CS1 was fully aware that the agents knew CS1's identity.  CS1 agreed to cooperate with law enforcement in this investigation and others for leniency on pending criminal charges.  The requirement that CS1 provide only truthful information was stressed to CS1 at the beginning of CS1's cooperation.

During the discussions with CS1, CS1 explained that he/she was introduced to BRACK and that BRACK has the capability of supplying CS1 with multiple controlled substances. CS1 stated that BRACK uses **TT1** to distribute narcotics[2].  CS1 also knows that BRACK frequently operates vehicles registered in other persons names and/or rental vehicles as a means of avoiding law enforcement detection.  CS1 also provided information that BRACK has numerous narcotics customers. Lastly, CS1 believes that BRACK maintains his narcotics in a local stash house on Virginia Avenue, in Butler, PA.

CS1's information has been corroborated through a controlled purchase of narcotics from BRACK during the third week of November 2021, which is discussed below.  In addition, CS1's information regarding BRACK's use of vehicles registered to other owners and/or rental vehicles has been corroborated via physical and electronic surveillance. Finally, investigators are aware that BRACK is associated with a residence located at 422 Virginia St. that is utilized to facilitate

---

[2] CS1 was provided an official state photograph of BRACK, absent biographical information, whom he positively identified as the user of the respective **TARGET TELEPHONE 1**.

his narcotics trafficking.

### CS1 Controlled Purchase from BRACK

During the third week of November 2021, case agents contacted CS1 to conduct a controlled purchase of narcotics from BRACK. While in the presence of law enforcement officers, CS1 communicated with BRACK over **TT1**, informing BRACK that he/she was available to meet. Using **TT1**, BRACK arranged to meet CS1 at an agreed upon location in Butler, PA for the purchase of a controlled substance.

Prior to the transaction, law enforcement officers searched CS1 for money, weapons, and contraband with negative results. CS1 was then provided with the official funds to be used during the controlled purchase. Shortly thereafter, CS1 traveled to the agreed upon location, where CS1 was to meet BRACK. CS1 was followed to that location by case agents who observed CS1 along the way. CS1 communicated to BRACK over **TT1**, informing him that he/she was at the agreed upon location.

A few minutes after CS1 arrived to the agreed upon location, physical surveillance observed BRACK exit 422 Virginia Ave and enter his vehicle. BRACK entered the driver side of the vehicle, and an unknown white female entered the front passenger side of the vehicle. Thereafter, BRACK departed from 422 Virginia Ave and traveled to the agreed upon meet location. BRACK then parked his vehicle directly behind CS1's vehicle. Subsequently, CS1 exited his/her vehicle and entered the rear passenger side of the BRACK's vehicle. After approximately one minute, CS1 exited BRACK's vehicle and returned to his/her vehicle.

At the conclusion of the meeting, BRACK departed the immediate location and drove around town before returning to 422 Virginia Ave. CS1 traveled to a pre-determined meeting location and provided case agents with the purchased crack cocaine. CS1 informed case agents

that BRACK arrived in his vehicle with a female he did not recognize. According to CS1, CS1 handed BRACK the agreed upon funds, and BRACK supplied CS1 with the arranged quantity of crack cocaine.

At the previously set meeting location, CS1 was searched for money, weapons, and contraband with negative results. CS1 was then debriefed by law enforcement officers involved in the controlled narcotics purchase. In addition to explaining how the transaction occurred as noted above, CS1 positively identified BRACK as the seller of the suspected narcotics.

## Conclusion

Service provider information for **TARGET TELEPHONE 1** was obtained via subscriber information, obtained via subpoena, and the Electronic Telephone Number Services (eTNS) platform which provides telephone number services to accurately and reliably determine current and historical carriers. The information that was returned showed that **TT1** was activated with T-Mobile on July 31, 2021. Furthermore, eTNS showed the **TT1** as being activated with T-Mobile.

The investigation of BRACK is ongoing. The goal of the investigation is to identify BRACK's co-conspirators, to determine the precise manner in which the criminal organization operates, and to dismantle the criminal organization through successful arrests and prosecutions of BRACK, and his associates, his sources of supply, distributors, and any other conspirators who assist the criminal organization. The goal of the investigation has not yet been fully achieved. Notification to BRACK of the disclosure of records and/or physical location data pertaining to **TARGET TELEPHONE 1** would very likely cause them to, among other things, discard the telephone(s) he is currently using and further fortify and conceal his criminal operation. In doing so, evidence is likely to be lost or never obtained, suspects may flee the jurisdiction, and the safety of informants and law enforcement officers may be imperiled.

Based upon the foregoing, there is probable cause to conclude that the records and physical location data of the **TARGET TELEPHONE 1** constitute evidence of crimes committed, and being committed, in the Western District of Pennsylvania. The records and physical location data, by itself and/or in conjunction with complementary investigative steps, will reflect where the **TARGET TELEPHONE 1**, BRACK, and certain associates are located when criminal activity occurs.

                                            */s/ Ryan Melder*
                                            Ryan Melder
                                            Special Agent, FBI

Sworn and subscribed before me, by telephone pursuant to Fed.R.Crim.P. 4.1(b)(2)(A), this 1st day of December 2021.

_____
HONORABLE MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE